# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| DONALD G. HARRADON and<br>KATHY S. HARRADON<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 3:19-CV-707-MGG |

## OPINION AND ORDER

The undersigned has plenary authority over this case pursuant to the consent of the parties and 28 U.S.C. § 636(c). Ripe before the Court in this declaratory judgment action are Plaintiffs' Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment. As detailed below, both motions are denied.

**I. RELEVANT BACKGROUND**

**A. Procedural Posture**

Plaintiffs Donald G. Harradon ("Donald") and Kathy S. Harradon filed their complaint in the Circuit Court of Marshall County, Indiana on August 7, 2019. Through their Complaint, Plaintiffs allege that non-party Mya Lewis ("Mya") was a resident relative of her mother, Anita Lewis ("Anita"), who held an automobile insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company ("State Farm") at the time of Mya's car collision with Donald, and is thus entitled to insurance

coverage provided by that policy. [DE 3 at 2]. Plaintiffs now seek declaratory judgment declaring that Mya is covered under Anita's State Farm policy.

State Farm removed the action to federal court on September 3, 2019, alleging subject matter jurisdiction based on the parties' diversity of citizenship. Jurisdiction is proper in this action under 28 U.S.C. § 1332(a) because it is between citizens of different states and the amount in controversy, exclusive of interest and costs exceeds $75,000. [DE 2 at 2].

After completing some but not all discovery, Plaintiffs filed their instant motion for partial summary judgment, seeking declaratory judgment in their favor on their claim that Mya was a resident relative of Anita Lewis and was a covered insured under the State Farm policy. [DE 19 at 1]. Defendant filed its own cross-motion for summary judgment seeking declaratory judgment in its favor on all claims asserting that Mya did not primarily reside at Anita's house and thus was not a resident relative under the State Farm policy. [DE 25 at 2]. Both motions were fully briefed.

**B.   Facts**

Where facts are in dispute, this Court has determined that the disputed facts are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

On Saturday, October 7, 2017, a collision occurred between automobiles driven by Donald and Mya in Marshall County, Indiana. Donald sustained significant injuries because of that collision. [DE 20 at 1]. At the time, the automobile driven by Mya was

insured by Auto-Owners Insurance Company, that paid its policy limits of $100,000 to Plaintiffs. [DE 19 at 2].

At the same time, Anita was insured under a State Farm automobile insurance policy, number 422 7662-A16-14A. [DE 20 at 2]. Anita's State Farm policy included liability coverage and was in effect at the time of the collision. The insurance policy provided coverage for the named insured shown on the declarations page of the policy as well as "resident relatives" of the named insured. [DE 25 at 3].

On the date of the collision, Mya was staying with her boyfriend Ben Myers ("Ben"), who lived with his mother at a home in Culver, Indiana. [*See* DE 21-4 at 1; DE 25 at 5]. Mya moved in with her boyfriend following her graduation from Culver high school in June 2017. [DE 21-2 at 6]. Mya had previously lived with Anita at her home in Rochester, Indiana. [*Id.* at 7]. While living with Ben, Mya left her dog at her mother's residence and stopped by her mother's house several times a week to feed the dog. [*Id.* at 6]. Mya also paid room and board in monthly payments to Ben's mother. [DE 21-4 at 70]. Although Mya considered the house that she shared with Ben to be her "primary residence," [DE 21-3 at 30], she used her mother's address on her driver's license and bank account and received tax returns, tax refunds, and a majority of her mail at her mother's address, as she had not filed an official change of address with the Post Office. [*Id.* at 34; DE 21-2 at 9]. While she lived with Ben, Mya did not have a key to her mother's house until after the October 2017 accident. [DE 21-4 at 1].

As the result of the accident in October 2017, Mya broke both of her hands and injured her spine, resulting in severe injury. Approximately three days after her

accident, Mya gave a statement regarding the accident and recalls giving her mother's address as her own. [*Id.* at 17]. Despite her mother's request that Mya move back home following her injury, Mya continued living with Ben. [*Id.* at 1]. In November 2017, Mya registered for CNA classes and listed her mother's address on her registration. [*Id.* at 19]. Mya became pregnant by Ben in December 2018; however, following a disagreement with him, Mya moved back in with her mother. [DE 21-2 at 6].

In the meantime, State Farm issued a letter to Mya and her mother on August 28, 2018, denying coverage for Mya's October 2017 accident because Mya did not qualify as an "insured" under Anita's policy because State Farm concluded Mya was not a "resident relative" of Anita's at the time of the collision. [DE 21-7 at 1]. Following this denial, Plaintiffs filed the instant lawsuit in state court, seeking declaratory judgment that at the time of the collision in question, Mya was a resident relative for the purposes of Anita's policy and is entitled to coverage under that policy. As noted above, this matter was removed to this Court in September 2019.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Moore v. Vital Prod. Inc.*, 641 F.3d 253, 256 (7th Cir. 2011); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all

facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it had that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).

### B. Discussion

The primary issue in this case is whether Mya Lewis is entitled to coverage under the operative State Farm Insurance Policy. At its core, the parties' dispute centers around whether Mya was a "resident relative" of Anita Lewis, the insurance policyholder, in October 2017 when Mya's car collided with Donald's.

Plaintiffs contend that Mya is entitled to coverage because she was a "resident relative" of Anita Lewis at the time of the collision and that at no point could Mya have

5

been considered a resident of the house that she shared with Ben. Defendant contends that Mya is not entitled to coverage because, regardless of whether Mya was a resident of Anita's residence, Mya did not "primarily reside" there as required by the State Farm insurance policy. Neither party disputes that Mya is a relative of her mother, Anita.

The relevant provision of the insurance agreement provides that State Farm will "pay damages an *insured* becomes legally liable to pay . . . caused by an accident that involves a vehicle for that *insured* is provided Liability Coverage by the policy." [DE 21-1 at 13 (emphasis in original)]. The policy lists "resident relatives" as "insured" for the purposes of the policy. [DE 25-3 at 5]. As relevant to the parties' instant disputes, the term "resident relative" is defined as follows:

> a person, other than you, who resides primarily with the first person shown as a named insured on the Declarations Page and who is:
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; . . . .

[DE 21-1 at 13].

Under Indiana state law, "the interpretation of an insurance policy presents a question of law to be decided by the court." *Nat'l Fire & Cas. Co. v. W. By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997). If the language in a policy is unambiguous, then the language is given its plain and ordinary meaning. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006). An ambiguity exists when a provision in a policy is subject to more than one interpretation and reasonable people could differ regarding its meaning. *Id.* Under Indiana law, "ambiguities in insurance policies are generally

6

construed against the policy drafter, and an interpretation yielding coverage is favored. *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir. 1993). However, if no ambiguity exists, the policy will not be interpreted to provide greater coverage than the parties bargained for themselves." *Id.*

Indiana courts have consistently held that the term "resident" does not have a precise meaning. *Jones v. W. Reserve Grp.*, 699 N.E.2d 711, 714 (Ind. Ct. App. 1998). Indiana courts have also explicitly declined to interpret the term as narrowly referring to a person's home or fixed residence. *Id.* at 716. In determining whether someone is a resident of a household for the purposes of an automobile liability insurance contract, Indiana courts consider three factors: (1) whether the claimant maintained a physical presence in the named insured's home; (2) whether the claimant had the subjective intent to reside there; and (3) the nature of claimant's access to the home and its contents. *Jones*, 699 N.E.2d at 714 (citing *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 594 (Ind. Ct. App. 1982)). The factfinder must also consider all evidence that is indicative of the claimant's living habits. *Id.*

In decisions construing the term "resident" in insurance policies, courts have applied the rule of construction that favors coverage. *Neumann*, 435 N.E.2d at 592. As such, in construing the term in insurance policies, it should be given a broad meaning in "extension" cases and a narrow interpretation in "exclusion" cases. *See Aetna Cas. & Surety Co. v. Crafton*, 551 N.E.2d 893, 895 (Ind. Ct. App. 1990). An extension case, like

7

Plaintiffs' case here, is one that involves a question of whether coverage in an insurance policy should be extended beyond the named insured.[1] *Id.*

The term "primary resident," however, is not defined in Anita's policy, and Indiana courts have not definitively ruled on how the term should be interpreted in an insurance context. In cases where no state court decision controls, federal district courts must "determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). Courts may also look to well-reasoned decisions in other jurisdictions for guidance on these issues. *Id.* (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007)).

The Court agrees with other courts, such as the U.S. District Court for the Southern District of Indiana, which have determined that the plain meaning of the word "primary" leaves little doubt as to the meaning of the term "primary residence." *See Grimes v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-CV-01039, 2019 WL 6491889, at *5 (S.D. Ind. Dec. 3, 2019). The *Grimes* court relied upon the definition of "primary" as "First; principal; chief; leading" found in Black's Law Dictionary to conclude that the term "primary residence," as used in this context, was unambiguous as a matter of law. *Id.* Similarly, the term "primary residence" in the context of this case should be given its ordinary and plain meaning. However, before it can be determined that a person—

---

[1] Throughout their briefs, both parties refer to this case as an "inclusion" case rather than an "extension" case. Neither party explains why they use this terminology and there is no indication that Indiana courts distinguish between the two terms. Accordingly, the Court will treat the terms as though they are functionally identical.

namely Mya—"primarily" resides at a particular residence, it must first be determined that the person resides there at all.

The three considerations for determining residence as outlined in *Jones* include only language reflecting Indiana state courts' evaluation of whether a claimant was a "resident" of the named insured's household. "Resides primarily," as included in the definition of "resident relative" in Anita's policy at issue here, implies the existence of multiple residences. The possibility of having multiple residences is established in Indiana law. *See Jones*, 699 N.E.2d at 717 (citing *Neumann*, 435 N.E.2d at 592). Additionally, residency cannot simply be determined based upon the claimant's home or fixed residence. *Id.* Rather, under *Jones*, three factors (presence, intent, and access) should be considered when considering a person's residence, as outlined above. *Id.* By inference then, a claimant's residence at any home, whether the named insured's or a third party's, must be determined by considering the three *Jones* criteria.

Here, Plaintiffs assert that, because Mya convincingly met the requirements for residency at Anita's home under Indiana law, she is Anita's "resident relative" for the purpose of the insurance policy. In support, Plaintiffs correctly state that this is an inclusion case and as such, the term "resident" should be given a broad meaning. *See Crafton*, 551 N.E.2d at 895. Applying the three *Jones* criteria for determining residency to the facts of this case, Plaintiffs support their contention that Mya was a resident of her mother's home at the time of the collision. In particular, Plaintiffs demonstrate that Mya maintained a physical presence at her mother's home as evidenced by the undisputed facts that Mya left her dog at her mother's house, fed the dog herself occasionally, and

felt as though she was a part owner of the house. [DE 21-2 at 7, 16; DE 21-3 at 1]. The facts that Mya never changed any bank account, tax, post office, or driver's license information to reflect the address of the house that she shared with Ben, that she moved back in with her mother after she and Ben ended their relationship, that in a statement given in regard to her October 2017 accident she listed her mother's address as her own, and that she used her mother's address to register for CNA classes in November 2017 further show that Mya possessed the subjective intent to reside in Rochester with her mother. [DE 21-2 at 9–10, 7; DE 21-4 at 17, 19]. Moreover, Plaintiff cites evidence that Mya had full access to Anita's home, could come and go freely and had no restrictions in regard to access to the property demonstrating the nature of access that Mya had to the entirety of Anita's home at the time of the accident. [DE 21-3 at 1, 16]; *see also Jones, 699 N.E.2d at 714*.

Based on these facts, viewed in light of the broad reading of the term "resident" necessary in this case and State Farm's lack of objection as to Mya's residence in Anita's home, there is no genuine dispute of material fact as to whether Mya was a resident of Anita's home at the time of the collision. Unfortunately, the finding that Mya was a resident at Anita's home is not dispositive of Plaintiff's motion for partial summary judgment.

While State Farm does not dispute Mya's residency at Anita's home, it does reject Plaintiffs' contention that Mya was a "resident relative" within the definition of the policy. More specifically, State Farm contends that Mya's deposition testimony indisputably illustrates that she *primarily* resided at Ben's house at the time of the

collision. It asserts that because of this, Mya could not have resided primarily at her mother's residence. Thus, State Farm concludes that Mya was not a "resident relative" of Anita's.

According to State Farm, Mya testified at her deposition that she physically moved her valued belongings to Ben's home on a specific date and left only her unused belongings at her mother's in order for them to be taken to Goodwill. [*See* DE 21-3 at 30]. Moreover, Mya testified that she shared a room with Ben at his mother's house in Culver and that she considered the Culver house to be her primary residence after moving. [*Id.*]. On top of that, Mya testified that when she moved in with Ben, she did not have a key to her mother's house and did not receive one until after the October 2017 accident. As a result, Mya stated that she did not have access to her mother's house when her mother was not home. [DE 21-4 at 1].

Plaintiffs, on the other hand, contend that Mya did not reside primarily at Ben's mother's house at the time of the collision and that a genuine dispute of material fact exists as to whether Mya was a resident of that house at all. Considering the *Jones* criteria for residence, Plaintiffs do not dispute that Mya maintained a physical presence at the Culver house.

Arguing that State Farm neither established nor addressed Mya's subjective intent to reside at Ben's mother's house or the extent to which she had access to that house and its contents, Plaintiffs designate evidence that Mya lacked the subjective intent to reside at Ben's mother's residence. Specifically, Plaintiffs cite Mya's deposition testimony where she stated that she was at Ben's mother's house because of her

11

relationship with Ben and that it was her understanding that, if her relationship with Ben ended, she would leave the home. [DE 21-2 at 13, 28]. From that testimony, Plaintiffs conclude that Mya's presence at Ben's mother's house was "expressly contingent upon her relationship with Ben." [DE 27 at 2]. Plaintiffs then note that Mya had moved back in with her mother in December 2018 after she became pregnant by Ben and that she never officially changed her address to Ben's mother's house. State Farm does not dispute these facts but argues that it designated sufficient evidence of Mya's subjective intent to reside at Ben's mother's house and the nature of her access to Ben's house so as to establish her residence, and her primary residence, at Ben's mother's house thereby justifying summary judgment in its favor.

Assuming that all of the facts presented by Plaintiffs are true and reviewing the evidence in the light most favorable to Plaintiffs, the evidence presented by Plaintiffs could convince a rational trier of fact to find that Mya did not have the subjective intent to reside at Ben's mother's home. Although Mya's testimony indicates that she had considered Ben's mother's house her primary residence at the time of the collision, a "self-serving statement of intent is not sufficient to find that a new residence has been established." *State Election Bd. v. Bayh*, 521 N.E.2d 1313, 1318 (Ind. 1988). Moreover, Mya never officially changed her address at the post office, on her driver's license, on her insurance information, or for tax purposes, and she listed her mother's address as her own on multiple occasions after the accident. In contrast, State Farm cites to Mya's testimony that "[n]one of this paperwork changing thing mattered to [her] at all," which could show that she had the subjective intent to reside at Ben's home. [DE 21-4 at 18].

12

State Farm also directs the Court to the facts that Mya lived at Ben's mother's house for over a year and returned to Ben's mother's house after her accident despite Anita's request that she return to her home. [DE 21-5 at 1]. Moreover, Mya did not have access to her mother's home because she did not have a key until after the accident in October 2017.

In light of this competing evidence propounded by the parties, reasonable minds could differ as to whether Mya had the subjective intent to reside at Ben's mother's house. As a result, there remains a genuine issue of material fact regarding Mya's subjective intent and ultimately her residence at Ben's mother's house at the time of the collision. Thus, State Farm is not entitled to summary judgment. Yet Plaintiffs are not entitled to the partial summary judgment they seek either.

As noted above, Anita's State Farm policy defines the term "resident relative" to require *inter alia* that the potential resident relative "maintain his or her primary residence with [the] named insured." [DE 21-1 at 13]. Plaintiffs acknowledge this definition but argue that State Farm overstates the importance of the word "primary" in the policy's definition. Plaintiffs then conclude that Mya qualifies as a "resident relative" under the policy without asserting or showing that she primarily resided at Anita's home.

In support, Plaintiffs point to language in the letter, written by a State Farm claims specialist in August 2018, denying coverage under Anita's policy to Mya. In that letter, State Farm attributed the denial of coverage to the fact that "Mya Lewis did not meet the definition of an insured because she was not a resident relative of Anita Lewis

13

at the time of the accident." [DE 21-7]. Plaintiffs contend that the letter's lack of reference to the "primary residence" term in explaining the denial of coverage undercuts State Farm's position here prioritizing "primary" in the undisputed definition of "resident relative." This proves too much.

Given the "primary residence" language in the policy's definition of a "resident relative," a claimant who does not reside primarily with the named insured does not qualify as a "resident relative." Thus, if a claimant did not primarily reside with the named insured, coverage would be denied on the grounds that they were not a "resident relative" for the purpose of the policy. Therefore, the omission of any mention of "primary residence" in the denial letter hardly suggests Mya's "primary residence" was not considered in the evaluation that led to the denial of coverage.

Additionally, Plaintiffs challenge the applicability of the *Grimes* holding—that the term "primary residence" is unambiguous based on the definition of the word "primary" and should be given its plain and ordinary meaning—to the facts of this case. *See Grimes*, 2019 WL 6491889, at *5. As a preliminary matter, Plaintiffs are correct that *Grimes*, a decision of a sister District Court, is not precedential or otherwise binding on this Court. Nevertheless, given the dearth of binding authority available on the specific term "primary residence," it is a case that can offer some persuasive insight.

Substantively, Plaintiffs attempt to distinguish *Grimes* from the facts of this case. Plaintiffs assert that *Grimes* should be read as a case for exclusion but that this case is one of inclusion such that the terms of Anita's insurance contract should be construed more broadly than the contract in *Grimes*. Plaintiffs fail, however, to support the

14

distinction. First, the cases cited by Plaintiffs do not discuss the specific term "primary residence." *See Omni Ins. Grp v. Poage*, 996 N.E.2d 750, 756 (Ind. Ct. App. 2012); *Ind. Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 304 (Ind. Ct. App. 2004). *Poage* and *Imel* only discuss the word "resident" when concluding that it warrants a broad interpretation in insurance cases. *Poage*, 996 N.E.2d at 756; *Imel*, 817 N.E.2d at 304. As noted above, individuals may reside in more than one place. In *Grimes*, instead of focusing on definition of "resident," the court interpreted the term "primary resident," which is the operative language in the State Farm policy in question.

Second, both *Grimes* and the instant case are cases of inclusion. In *Grimes*, the issue before the court was whether a claimant could be considered a "resident relative" under their parents' underinsured motor vehicle policy with State Farm. *Grimes*, 2019 WL 6491889, at *1. Here, the central question is whether insurance coverage under Anita's State Farm automobile policy should extend beyond her to Mya as "resident relative." Thus, the facts of *Grimes* are sufficiently analogous to the relevant facts in this case that its holding is relevant to this Court's determination of where Mya primarily resided at the time of the accident even though *Grimes* does not constitute binding authority in this Court.

Although it may be true, as Plaintiffs argue, that "there are many factors in this case to determine whether Mya Lewis was a resident relative," [DE 26 at 2–3], the insurance policy in question clearly states that a resident relative is someone who "primarily" resides with the insured. [DE 21-1 at 13]. And Plaintiffs have neither established nor asserted that Mya primarily resided at Anita's home at the time of the

15

collision. As Plaintiffs do not dispute that Mya did not primarily reside at her mother's house at the time of collision, they have not established that Mya was a "resident relative" in Anita's home. As such, Plaintiffs are not entitled to the judgment as a matter of law and their motion for partial summary judgment must be denied.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment [DE 19] and **DENIES** State Farm's Motion for Summary Judgment [DE 24].

The Court **SETS** a telephonic scheduling conference for **Wednesday, August 11, 2021**, at **11:30 a.m. (E.D.T.)** to discuss the status of this case and potential trial dates. To connect to the conference, parties should dial 877-336-1828, and enter access code 5433302# at least five minutes before the conference start time.

**SO ORDERED** this 16th day of July 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge